No. 22-6100

_____

# UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

_____

JAMES A. CODDINGTON (EXECUTION DATE SET 08-25-2022),
*Plaintiff-Appellant,*

v.

SCOTT CROW, ET AL.,
*Defendants-Appellees.*

_____

On Appeal from the United States District Court for
the Western District of Oklahoma (No. 5:14-cv-00665)
The Honorable Stephen P. Friot

_____

## REPLY MEMORANDUM IN SUPPORT OF
## MOTION FOR STAY OF EXECUTION

_____

Emma V. Rolls
Office of the Federal Public Defender
for the Western District of Oklahoma
215 Dean A. McGee Ave., Suite 707
Oklahoma City, OK 73102

James K. Stronski
CROWELL & MORING LLP
590 Madison Avenue
New York, NY 10022

Jennifer M. Moreno
Office of the Federal Public Defender
District of Arizona
850 West Adams Street, Suite 201
Phoenix, Arizona 85007

Alex Kursman
Federal Community Defender Office
Capital Habeas Unit
601 Walnut Street, Suite 545W
Philadelphia, PA 19106

James Coddington, through undersigned counsel and pursuant to this Court's Orders dated July 6, 2022, and July 18, 2022, states the following in reply to Defendant-Appellees' Response in Opposition to Motion for Stay of Execution.

## I. Mr. Coddington is Likely to Succeed on the Merits of His Claim.

Of the four traditional factors considered on a motion for preliminary injunction or stay of execution, irreparable injury and likelihood of success are "the most critical." *Nken v. Holder*, 556 U.S. 418, 434 (2009). Because these factors weigh in favor of Mr. Coddington, this Court should grant his motion and further consider his claim following full briefing this fall.

### A. The Right at Issue is the Right to Access the Courts.

Throughout their response in opposition to Mr. Coddington's motion, Defendants-Appellees mischaracterize the right and injury at issue in his claim. The right at issue here is Mr. Coddington's right of access to the courts, and the injury "is the loss of meaningful access to the courts, not merely the possibility that the execution team will violate the Eighth Amendment." Mot. at 15. Defendants-Appellees, however, attempt to reframe Mr. Coddington's right of access to the courts as a "right to counsel to search for hypothetical grievances," Opp. at 9, and argue that his challenge is based on "prospective claims, not existing ones," Opp. at 12. The Court should not countenance Defendants-Appellees' efforts to recast the right and injury at issue here.

The Supreme Court has explained that the right to access the courts requires prisons to provide "the means for ensuring 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts.'" *Lewis v. Casey*, 518 U.S. 343, 351 (1996) (quoting *Bounds v. Smith*, 430 U.S. 817, 825 (1977)). This right "guarantees no particular methodology but rather the conferral of a capability—the capability of bringing contemplated challenges" to courts. *Id.* at 356; *see also id.* at 354 (the right of access recognized in *Bounds* is "a right to bring to court a grievance that the inmate wished to present" (citing cases)). In *Lewis*, the Court emphasized that the right at issue was not "the right to a law library or to legal assistance," but rather "the (already well-established) right of *access to the courts.*" *Id.* at 350 (citing *Bounds*, 430 U.S. at 817, 821, 828) (emphasis in original); *see also id.* at 356-57 (explaining that the right at issue was the capability "to file nonfrivolous legal claims"—not "the capability of turning pages in a law library").

Here, the right Mr. Coddington seeks to safeguard is his right to access the courts, or in other words, his right to "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis*, 518 U.S. at 351 (quoting *Bounds*, 430 U.S. at 825). Contrary to Defendants-Appellees' characterization, Mr. Coddington is not asserting any "right to discover grievances" or right to "help concocting new claims." Opp. at 10, 13. The right Mr. Coddington asserts here is not even the right to counsel as an end in and of itself; just as a law

library or legal assistance were not the rights at issue in *Lewis*, the presence of and communication with counsel throughout the execution procedure is not the right at issue here. *See Lewis*, 518 U.S. at 350, 356-57. Instead, the "capability" Mr. Coddington seeks, as conferred by his right to access the courts, is the capability to file nonfrivolous legal claims during his execution. *Id.* at 356. The presence of and communication with counsel throughout the execution procedure simply a means by which prison officials can ensure that Mr. Coddington has a reasonably adequate opportunity to file nonfrivolous legal claims challenging constitutional violations that arise during that time.

The injury here is the imminent threat that Mr. Coddington will lack a reasonably adequate opportunity to present a claimed constitutional violation during his execution. *See Lewis*, 518 U.S. at 349 ("It is for the courts to remedy past or imminent official interference with individual inmates' presentation of claims to the courts."). This injury is not speculative. A constitutional violation that occurs during an execution obviously cannot occur until the execution is underway, but that does not mean that claims based on constitutional violations that occur during executions are speculative. Because Mr. Coddington's execution is not yet underway, a claim based on a constitutional violation that occurs during his execution may be only speculative *right now*—but Mr. Coddington is not filing a claim based on an injury resulting from a constitutional violation during his execution *right now*, and at the

3

point in time when Mr. Coddington does file such a claim, the claim will not be speculative.[1] Just as the constitutional violation that occurs during the execution is not the same constitutional violation at issue in the instant claim, the injury that may occur during the execution is not the same injury at issue in the instant claim.

Because Mr. Coddington's right to access the courts is burdened by Oklahoma's execution protocol, *see* Br. at 10-12, the district court was obligated to analyze his claim with respect to the *Turner* factors and erred in failing to do so. *See Mann v. Reynolds*, 46 F.3d 1055, 1060 (10th Cir. 1995) ("*[A]ny* burden placed upon a prisoner's constitutional rights requires a federal court to take the next step to determine whether it is "'reasonably related' to legitimate penological objectives, or whether it represents an 'exaggerated response' to those concerns.") (emphasis in original) (quoting *Turner v. Safley*, 482 U.S. 78, 86 (1987)). Defendants-Appellees grossly mischaracterize case law in stating that "[t]he *Mann* case . . . involved access to counsel for existing claims," and that "[t]he question at issue was whether it was appropriate . . . to single out attorneys for restricted contact." Opp. at 11 (citing *Mann*, 46 F.3d at 1056-57, 1060). The question in *Mann* was "whether the present system, providing some contact [between the plaintiffs and their attorneys], satisfies

---

[1] If no constitutional violations arise during his execution, then Mr. Coddington will not file any such claims. The possibility that a constitutional violation might not arise does not vitiate Mr. Coddington's constitutional right to access the courts; it simply means he will not exercise his right to access the courts during his execution if he does not need to.

the requirement of providing adequate, effective, and meaningful access to the courts." *Mann*, 46 F.3d at 1057 (quoting *Mann v. Reynolds*, 828 F. Supp. 894, 904 (W.D. Okla. 1993)). On appeal, a panel of this Court was "called upon to review whether [the district court's] ensuing determinations comport with *Turner*." *Id.* The decision nowhere mentions any particular claims, "existing" or otherwise, but instead focuses solely on whether the prison policies at question violated the plaintiffs' Sixth and Fourteenth Amendment rights to access their counsel and the courts. *See generally id.*; *see also Mann*, 828 F. Supp. at 904 ("The questions presented in this case are whether defendants' regulation prohibiting full contact visits between plaintiffs and their personal attorneys (1) infringes upon a retained constitutional right, and, if so, (2) whether the offending regulation is nevertheless permissible as it is reasonably related to legitimate penological interests."). The "singling out" of attorneys for restricted contact was merely something this Court found "disturbing in the *Turner* context" because the lack of any evidence that the restrictions were reasonably related to prison security "coupled with" the lack of restrictions on contact for anyone other than attorneys suggested under *Turner* that "the limitation on contacts between lawyers and clients is not related to a legitimate penological interest." *Id.* at 1061.

Defendants-Appellees similarly miss the point with respect to the Supreme Court's recent decision in *Ramirez v. Collier*, 142 S. Ct. 1264 (2022). Mr.

5

Coddington does not cite *Ramirez* for any proposition relating to RLUIPA, but instead as support for the assertion that here, as in *Ramirez*, "there appear to be less restrictive ways to handle any concerns" relating to prison security. 142 S. Ct. at 1280. Defendants-Appellees fail to respond to this assertion, and they ignore Mr. Coddington's argument that because "[c]omparable measures are available . . . the blanket restrictions currently in place are not 'reasonably related to legitimate penological objectives,' but rather are 'an exaggerated response' to irrational concerns." Br. at 17 (quoting *Mann*, 46 F.3d at 1060 (quoting *Turner*, 482 U.S. at 86)); *see also* Br. at 16 (suggesting simple alterations to Oklahoma's execution protocol that would allow Mr. Coddington to access the courts throughout the execution procedure).

Finally, Defendants-Appellees' argument regarding a "cognizable interest under the Fifth or Sixth Amendment," Opp. at 13, is misleading. The constitutional right of access to counsel has been grounded not only in the due process clauses of the Fifth and Fourteenth Amendments, but also in the Article IV Privileges and Immunities Clause, the First Amendment Petition Clause, and the Fourteenth Amendment Equal Protection Clause. *See Christopher v. Harbury*, 536 U.S. 403, 415 & n.12 (2002) (describing various bases underlying the "the constitutional right of access to courts" and citing cases). With respect to the Sixth Amendment, the Fifth Circuit decision cited by Defendants-Appellees is not binding on this Court.

6

*See* Opp. at 14 (citing *Whitaker v. Collier*, 862 F.3d 490, 501 (5th Cir. 2017)). Consistent with several other courts that have addressed the question, this Court should find that "the circumstances of an execution 'present an inherent risk of actual injury to the timely and meaningful presentation of non-frivolous claims to a court.'" *McGehee v. Hutchinson*, 463 F. Supp. 3d 870, 925 (E.D. Ark. 2020) (quoting *Cooey v. Strickland*, No. 2:04-CV-1156, 2011 WL 320166, at *7 (S.D. Ohio Jan. 28, 2011)); *see also Hoffman v. Jindal*, No. CIV.A. 12-796-JJB, 2014 WL 130981, at *6 (M.D. La. Jan. 10, 2014) ("Courts have recognized that the traditional access to the courts analysis requiring actual injury is unworkable in the prisoner execution context. . . . within in this unusual context courts have found that the actual injury is self evident.") (internal quotation marks omitted).

### B. Access to the Courts During an Execution Is Consistent with Historical Precedent.

Defendants-Appellees argue there is "no historical precedent for any of [Mr. Coddington's] requests, whether it be lawyer involvement, requiring curtains to remain open, or the like." Opp. at 16. In fact, the opposite is true. Early executions in the United States were spectacles, designed to be "public, outdoors, and as conspicuous as any event could possibly be." Stuart Banner, *The Death Penalty*, 24 (2002). Executions in the seventeenth and eighteenth centuries "drew the largest audiences ever assembled for any occasion." Dwight Conquergood, *Lethal Theater:*

7

*Performance, Punishment, and the Death Penalty*, 54 Theatre Journal 339, 344 (Oct. 2002).

The public, including any representative of the condemned, were long permitted to view the entire execution process. *See, e.g.*, *Double Death. Ohio Disgraced by Another Gallows Horror*, St. Louis Globe-Democrat, Oct. 2, 1876. The practice of allowing witnesses to view the entirety of an execution continued even as they moved indoors. *See, e.g.*, *Smiles and Chews Gum as He Faces the Gallows*, The Spokesman-Review, Apr. 16, 1944[2] (reporting that witnesses watched the condemned "enter the death house a converted warehouse" during a 1944 hanging); *Texas Rapist Dies in Electric Chair*, Chicago Daily Defender *in* ProQuest Historical Newspapers, Jan. 11, 1962 at 4 (describing the "tears stream[ing] down [Charles Lewis Forgery's] cheeks as guards strapped him into the chair at the state penitentiary shortly after midnight").

Despite this historical precedent, Defendants-Appellees state the "most troubling[]" aspect of allowing access to counsel and the courts during an execution is that it might "lead to the distinct possibility of the country's first livestreamed execution[.]" Opp. at 16. Their apprehension is odd. Defendants-Appellees' keenness to execute Mr. Coddington, *see* Opp. at 19, and confidence in the

---

[2] Available at:
https://news.google.com/newspapers?nid=1314&dat=19440416&id=5XRWAAAAIBAJ&sjid=geQDAAAAIBAJ&pg=3462,3873444

constitutionality of their execution procedures, *see* Opp. at 14-15, would seem to suggest that access to Mr. Coddington's execution should cause them no concern. Barring Mr. Coddington's attorney access to execution procedures shields the state from public oversight and scrutiny essential to the functioning of justice and democracy, and is inconsistent with historical precedent.

    **C.**    **Mr. Coddington's Proposed Alterations to the Protocol are Reasonable and Non-Disruptive.**

Mr. Coddington has suggested several measured and reasonable changes to Oklahoma's execution protocol to ensure it allows condemned prisoners access to their counsel and the courts. *See Turner*, 482 U.S. at 86 (directing courts to consider alternative means of exercising a right). Contrary to Defendants-Appellees' dramatic mischaracterizations, none of Plaintiff's suggestions remotely involve "roving" lawyers, an "express mandate to intervene," or the relocation of "nearly the entire viewing crowd . . . into the execution chamber itself." Opp. at 16.

Defendants-Appellees mischaracterize Mr. Coddington's proposed measures, which are detailed in his opening brief and entirely reasonable. *See* Br. at 16-17. Moreover, these overwrought concerns have simple solutions. Defendants-Appellees do not need to invite counsel inside the execution chamber itself, as long as counsel is able to continuously observe what is happening, communicate with the client, and communicate with the outside world. This can be accomplished by allowing counsel to be in the viewing room, remain in contact with the client by

9

phone, intercom, or walkie-talkie, and have access to a phone capable of making outgoing calls. If Defendants-Appellees are concerned about livestreaming, they can simply provide a phone without a camera or access to the internet.

## II.     The Balance of Equities Favors A Stay of Execution.

Mr. Coddington does not bring this claim as a dilatory tactic; rather, he has diligently pursued this claim at every opportunity throughout the past eight years. As Defendants-Appellees correctly note, this lawsuit began on June 25, 2014. Opp. at 2 (citing ROA, Vol. I, at 65). Mr. Coddington not only advanced this argument in the initial pleadings, but most recently proposed an expedited merits briefing schedule in lieu of any and all motions for stay of execution. *See* Parties' Proposed Briefing Schedule at 1-2. Defendants-Appellees, however, rejected this proposal. *See id*.

## CONCLUSION

For the foregoing reasons, Mr. Coddington requests that the Court grant his motion for stay of execution pending consideration of his appeal to this Court.

Respectfully submitted this 1st day of August, 2022.

        Respectfully submitted,

        *s/ Emma V. Rolls*
        Emma V. Rolls
        Office of the Federal Public Defender
        215 Dean A. McGee Ave., Suite 707
        Oklahoma City, OK 73102
        Telephone: (405) 609-5975
        Emma_Rolls@fd.org

        James K. Stronski
        CROWELL & MORING LLP
        590 Madison Avenue
        New York, NY 10022
        Telephone: (212) 223-4000
        jstronski@crowell.com

        Jennifer M. Moreno
        Office of the Federal Public Defender
        850 West Adams Street, Suite 201
        Phoenix, Arizona 85007
        Telephone: (602) 382-2816
        jennifer_moreno@fd.org

        Alex Kursman
        Federal Community Defender Office
        Capital Habeas Unit
        601 Walnut Street, Suite 545W
        Philadelphia, PA 19106
        Telephone: (215) 928-0520
        alex_kursman@fd.org

        COUNSEL FOR JAMES CODDINGTON

## CERTIFICATE OF COMPLIANCE

This reply complies with the type-volume limitation contained in Fed. R. App. P. 27(d)(2)(A) because, excluding the portions exempted by Rule 32(f), this reply contains 2355 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word 2019 in 14-point Times New Roman.

*s/ Emma V. Rolls*

## CERTIFICATE OF DIGITAL SUBMISSION

I hereby certify that with respect to the foregoing reply:

(1) all required privacy redactions have been made pursuant to 10th Cir. R. 25.5;

(2) if required to file additional hardcopies, that this submission is an exact copy of those documents;

(3) this digital submission has been scanned for viruses with the most recent version of Symantec Endpoint Protection, Version 14.2, and according to the program is free of viruses.

*s/ Emma V. Rolls*

## CERTIFICATE OF SERVICE

I certify that on August 1, 2022, I electronically filed the foregoing reply with the Clerk of Court for the U.S. Court of Appeals for the Tenth Circuit through the appellate CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

*s/ Emma V. Rolls*
